UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT BEEMER,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | :    No. 3:19-CV-548 (VLB) |
| L. DESTEFANO, et al.<br>    *Defendants.* | :<br>:<br>:    September 24, 2019 |

**REVIEW OF AMENDED COMPLAINT (Dkt. No. 12)**

On April 12, 2019, Robert Beemer ("Plaintiff"), an inmate currently confined at the Osborn Correctional Institution in Somers, Connecticut, filed a complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983, against six Department of Correction ("DOC") officials for damages. Compl. (Dkt. No. 1) at 1-3, 9. The Court dismissed the complaint without prejudice under 28 U.S.C. § 1915A for failure to state a plausible claim against any of the defendants but permitted Plaintiff one opportunity to amend his complaint with additional facts. Initial Review Order (Dkt. No. 11). Shortly thereafter, Plaintiff filed an amended complaint naming three DOC officials as defendants: Dr. Ricardo Ruiz, Jeff Stamp, and Dr. Carson Wright. Am. Compl. (Dkt. No. 12). For the following reasons, the Court will permit Plaintiff's amended complaint to proceed in part.

I. **Standard of Review**

Pursuant to 28 U.S.C. § 1915A, this Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or

that seeks monetary relief from a defendant who is immune from such relief.  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic*, 550 U.S. at 570.  Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

II.     Factual Allegations in Amended Complaint

In June of 2016, while he was confined at the MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Plaintiff fell off his top bunk in his cell and landed on his left shoulder, causing severe pain.  Am. Compl. ¶ 6.  At the time, Plaintiff had been issued a bottom bunk pass, but a correction officer at MWCI told him that the pass was not valid because it was written on an Inmate Request form.  *Id.* at ¶¶ 7-8.

The day after the incident, Plaintiff went to the medical unit at MWCI and informed the nurse there about what had occurred.  Am. Compl. ¶ 10.  The Plaintiff was prescribed Motrin for his pain.  *Id.*

On July 28, 2016, Plaintiff was transferred from MWCI to Northern Correctional Institution ("Northern") in Somers. Am. Compl. ¶ 14. When he arrived at Northern, he submitted written requests to the medical unit concerning his shoulder pain and immobility of his left arm. *Id.* Thereafter, he was evaluated by Dr. Wright, who prescribed him Motrin, Flexeral, Cipro, and Neurtontin. *Id.* at ¶ 15. However, none of these medications were effective in alleviating his shoulder pain. *Id.* Dr. Wright also submitted a Utilization Review Committee ("URC") request for an orthopedic evaluation for Plaintiff at the UConn Health Center. *Id.* at ¶ 16.

On January 18, 2017, the URC denied Dr. Wright's request "[b]ecause no physical exam[ination] or functional assessment was provided." Am. Compl. ¶ 18. The URC stated that the request could be resubmitted "after a thorough examination," but no follow-up evaluation was performed. *Id.* at ¶ 19. Plaintiff was told that Dr. Wright intended to resubmit the URC request, but he never received notification that Dr. Wright followed through on the resubmission. *Id.* at ¶ 20.

On March 3, 2017, Plaintiff was transferred back to MWCI. *See* Am. Compl. ¶ 25. Officials took x-rays of Plaintiff's arm while he was confined at MWCI. *Id.*

On March 30, 2017, Plaintiff was transferred to Cheshire Correctional Institution ("Cheshire"). Am. Compl. ¶ 26. There, he requested treatment for his ongoing pain and limited mobility in his left arm and was evaluated by Dr. Ruiz. *Id.* at ¶¶ 26-27. Despite evaluating his condition, Dr. Ruiz did

not decide on any treatment plan for Plaintiff. *Id.* at ¶ 27. Plaintiff continued to write requests to the medical unit at Cheshire about his ongoing medical condition and was told that he had been placed on the list to see Dr. Ruiz, but from November 2017 to March 2, 2019, Plaintiff was never evaluated or treated for his condition. *Id.* at ¶¶ 28-29.

During his confinement at Cheshire, Plaintiff wrote a request to Jeff Stamp, the medical supervisor, regarding a grievance he had previously filed. Am. Compl. ¶ 33. On December 3, 2017, he was given a pass to go to the medical unit. *Id.* When he arrived, he met with Stamp in an examination room, who had a copy of the grievance he had submitted. *Id.* Stamp picked up the grievance form, shook it in front of Plaintiff, and stated, "You better be careful who[m] you write!" *Id.* at ¶ 34. Plaintiff interpreted Stamp's remark as threatening and feared retaliation for writing letters to the Commissioner of Correction and UConn Health Center about his inability to receive adequate medical care. *Id.* at ¶ 35. Stamp then performed an evaluation of Plaintiff, determined that he had "vein and valve" in his left arm, and referred him to the facility doctor. *Id.* at ¶ 57; Pl.'s Ex. 11 (Dkt. No. 12-4 at 6).

Plaintiff wrote a letter to the mental health unit at Cheshire after Stamp had threatened him. Am. Compl. ¶ 59. Later, his cell was "shook down several times" by correction officers, and his personal items were scattered across his bunk. *Id.*

4

Plaintiff continues to suffer ongoing pain in his left shoulder and arm.  Am. Compl. ¶ 43.  Although he currently takes medications, the medications are of "little help."  *Id.*

### III.  Analysis

Plaintiff claims that the defendants acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment protection against cruel and unusual punishment, his Fifth[1] and Fourteenth Amendment rights to due process, and his Fourteenth Amendment right to equal protection of the laws.  Am. Compl. ¶¶ 44, 49-64.  He also claims that Stamp retaliated against him for exercising his right to free speech, in violation of the First Amendment; *id.* at ¶¶ 58-60; and that all defendants violated his rights under the Article First, §§ 3, 4, 5, 9, 10, 14, 19, and 20 of the Connecticut Constitution.  *Id.* at ¶ 49.  The Court will permit the Eighth Amendment claim to proceed against Dr. Ruiz but dismiss the remaining constitutional claims.

#### A. Deliberate Indifference to Medical Needs

Plaintiff brings his deliberate indifference to medical needs claim under the Eighth and Fourteenth Amendments to the United States Constitution and alleges that he was a "pretrial detainee" from July 28, 2016 to March 2, 2019.  *See* Am. Compl. ¶¶ 23, 31, 44.  A pretrial detainee's

---

[1] **The Fifth Amendment applies to the federal government, not to the states.** *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ambrose v. City of New York*, 623 F. Supp.2d 454, 466–67 (S.D.N.Y. 2009). None of the listed defendants in this case are federal government officials. Accordingly, Plaintiff's Fifth Amendment claim is dismissed.

claim that a state official acted with deliberate indifference to his medical needs is analyzed under the Fourteenth Amendment, and not the Eighth Amendment, because the detainee has not yet been convicted of a crime and, therefore, cannot be subjected to punishment.  *See Garcia v. Univ. of Conn. Health Care Ctr.*, No. 3:16-CV-852 (JCH), 2018 WL 5830840, at *9 (D. Conn. Nov. 7, 2018) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)); *Walker v. Wright*, No. 3:17-CV-425 (JCH), 2018 WL 2225009, at *5 (D. Conn. May 15, 2018).  However, state records show that Plaintiff was sentenced to ten years' imprisonment on March 16, 2017.[2]  Thus, the Court will analyze the claim against Dr. Wright under the Fourteenth Amendment because it concerns events that took place prior to March 16, 2017, when Plaintiff was a pretrial detainee.  The claims against Stamp and Dr. Ruiz are subject to the Eighth Amendment standard because they concern events that occurred after Plaintiff was sentenced in state court.

      1. <u>Claim Against Dr. Wright</u>

To state a plausible deliberate indifference to medical needs claim under the Fourteenth Amendment, Plaintiff must allege facts showing (1) that Dr. Wright's actions created an unreasonable risk of serious damage to his health, and (2) that Dr. Wright engaged in "objectively reckless behavior."  *Garcia*, 2018 WL 5830840, at *9.  With respect to the first prong,

---

[2] *State v. Beemer*, No. KNL-CR16-0129584-T (Conn. Super. Ct. Mar. 16, 2017); Connecticut State Department of Correction, Inmate Information, Robert Beemer, <u>ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=276-477</u>.

6

Plaintiff must show that the deprivation of medical care was "sufficiently serious." *Id.*  As to the second prong, he must show that Dr. Wright "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him] even though [Dr. Wright] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Despite prescribing him medication and requesting an orthopedic evaluation on his behalf, Plaintiff claims that Dr. Wright violated his Fourteenth Amendment rights by failing to conduct a full examination of his injury before submitting the initial URC request and/or failing to resubmit the URC request.  *See* Am. Compl. ¶¶ 18-20, 51.  Even under the lower Fourteenth Amendment standard, the Court does not conclude that Plaintiff's allegations against Dr. Wright are sufficient to state a constitutional claim.  The facts do not show that Dr. Wright "acted intentionally . . . or recklessly failed to act with reasonable care" in response to Plaintiff's condition.  At best, Plaintiff has alleged facts to support a medical malpractice claim against Dr. Wright, which is insufficient support a Fourteenth Amendment claim.  *See Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019).  Therefore, the Fourteenth Amendment claim against Dr. Wright is dismissed.

    2. <u>Claims against Stamp and Dr. Ruiz</u>

To state a claim for deliberate indifference to his serious medical needs under the Eighth Amendment, Plaintiff must satisfy an objective and

subjective component.  *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  Objectively, he must show a "sufficiently serious" deprivation; *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); meaning a condition "that may produce death, degeneration, or extreme pain."  *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).  However, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim."  *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original; internal quotations omitted).  Subjectively, Stamp and Dr. Ruiz must have been actually aware of a substantial risk that Plaintiff would suffer serious harm as a result of their actions or inactions.  *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

Construed liberally, the Court will permit Plaintiff's Eighth Amendment claim to proceed against Dr. Ruiz based on the allegations that (1) Dr. Ruiz failed to implement any treatment plan after evaluating Plaintiff, and (2) Plaintiff's inability to receive any treatment from November 2017 to March 2019 despite numerous written requests.  *See* Am. Compl. ¶¶ 27-29.  The Eighth Amendment claim will proceed against Dr. Ruiz in his individual capacity for damages and in his official capacity for injunctive relief.

Plaintiff has not, however, stated a plausible Eighth Amendment claim against Stamp. He alleges that Stamp evaluated him on December 3, 2017, determined that he had "vein and valve" in his left arm, and referred him to the facility physician. Am. Compl. ¶ 57; Pl.'s Ex. 11. Plaintiff's contention that Stamp should have "schedule[d] [him] to see [a] specialist regarding his shoulder injury" amounts to a disagreement over the proper course of treatment for his condition, which is insufficient to establish an Eighth Amendment violation. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Therefore, the Eighth Amendment claim against Stamp is dismissed.

B. <u>Substantive Due Process</u>

To the extent Plaintiff is claiming that the denial of adequate medical care also violated his right to substantive due process under the Fourteenth Amendment, his claim fails. "Substantive due process protects individuals against government action that is arbitrary . . . conscience-shocking . . . or oppressive in a constitutional sense . . . but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (citations omitted; internal quotations omitted). "Constitutional violations do not, in and of themselves, 'shock the conscience' for the purposes of substantive due process." *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 409 (D. Conn. Mar. 1, 2016) (quoting *Roman v. Velleca*, No. 3:11-CV-1867 (VLB), 2012 WL 4445475, at *10 (D. Conn. Sept. 25, 2012)). Plaintiff's allegations in this case do not support a

finding that Dr. Wright's or Stamp's conduct was "arbitrary" or "conscience-shocking." His claim against Dr. Wright appears to be, at best, one of medical malpractice, and the claim against Stamp is primarily based on a verbal threat, which the Second Circuit has rejected as constituting a factual basis for a claim under § 1983. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986). As for Dr. Ruiz, any substantive due process claim would be duplicative because the Court is permitting Plaintiff's Eighth Amendment claim for deliberate indifference to medical needs to proceed against him. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claim[]'"). Therefore, the Fourteenth Amendment substantive due process claim is dismissed.

    C. <u>Equal Protection of the Laws</u>

Plaintiff claims that the defendants deprived him of "fair and equal protection to medical care." Am. Compl. ¶ 44. To the extent he is attempting to state a claim that the defendants deprived him equal protection of the laws under the Fourteenth Amendment, his claim fails.

"To state an equal protection claim, [Plaintiff] must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to

10

inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Trowell v. Theodarakis*, No. 3:18-CV-446 (MPS), 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). Alternatively, Plaintiff may state an equal protection violation claim under the "class of one" theory by alleging facts showing that he was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

There are no facts in this case showing either that Plaintiff was treated differently than other similarly situated inmates or that the defendants' conduct was discriminatory in nature. Thus, the equal protection claim is dismissed.

### D. Retaliation

Plaintiff next claims that Stamp violated his First Amendment right to free speech by retaliating against him for voicing his concerns about the inadequate medical care he was receiving. *See* Am. Compl. ¶¶ 58-62. He bases his claim on what he characterized as the threatening remark Stamp made to him about his grievance and the fact that correction officers "shook down" his cell on several occasions afterward. *Id.*

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, No. 3:11-CV-631 (SRU), 2012 WL 2716355, at *6 (D. Conn. July 9, 2012). To state a plausible First

11

Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the [Stamp] took adverse action against [him], and (3) that there was a causal connection between the protected [speech] and the adverse action."  *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted); *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).  "In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, No. 08-CIV-941 (TJM/CFH), 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) (prisoners may be required to tolerate more than average citizens before alleged retaliatory action against them is considered adverse).  In order to allege causation, Plaintiff must state facts "suggesting that the protected conduct was a substantial or motivating factor in [Stamp's] decision to take action against him."  *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

"Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient."  *Riddick*, 2012 WL 2716355, at *6; *see also Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) ("virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional

violation – can be characterized as a constitutionally proscribed retaliatory act"), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "Accordingly, plaintiffs in retaliatory motive cases must plead 'specific and detailed factual allegations which amount to a persuasive case' or 'facts giving rise to a colorable suspicion of retaliation.'" *Moore*, 92 F. Supp. 3d at 120 (quoting *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001)).

      In this case, Plaintiff's allegations do not satisfy the second or third components of the retaliation standard. Although filing grievances and written complaints against prison officials certainly constitutes protected speech; *see Brown v. Tuttle,* No. 3:13-CV-1444 (VAB), 2015 WL 3886466, at *6 (D. Conn. June 24, 2015); Stamp's remark to Plaintiff, "You better be careful who[m] you write," does not rise to the level of conduct that would deter an inmate from exercising that right. *See Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (statements to plaintiff that there were "no secrets in prison" and that he would "have to pay the consequences for filing a grievance" not adverse action). To the extent the claim is based on the subsequent "shake downs" of Plaintiff's cell, the claim still fails because there are no facts showing that Stamp was personally involved in such conduct or that it was causally connected to Plaintiff's grievances. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (claims for damages under § 1983 require showing of personal involvement). Therefore, the First Amendment claim against Stamp is conclusory and cannot proceed.

13

### E. State Constitutional Claims

Finally, Plaintiff claims that all defendants violated his rights under Article First, §§ 3, 4, 5, 9, 10, 14, 19, and 20 of the Connecticut Constitution but does not offer any explanation in support thereof. The Court cannot exercise supplement jurisdiction over any of these claims.

This Court can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Four of the state constitutional provisions cited by Plaintiff provide for rights encompassed under the First Amendment to the United States Constitution. Article First, § 3 provides for the free "exercise and enjoyment of religious profession and worship, without discrimination;" Conn. Const. art. I, § 3. Section 4 provides that "[e]very citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty." Conn. Const. art. I, § 4. Section 5 provides that "[n]o law shall ever be passed to curtail or restrain the liberty of speech or of the press." Conn. Const. art. I, § 5. Section 14 provides for

14

the right of citizens to assemble and petition the government for redress of grievances. Conn. Const. art. I, § 14. However, courts have refused to recognize private causes of action under these provisions. *See Richard v. Strom*, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018); *Groomes v. Frazir*, No. 3:17-CV-1072 (JCH), 2017 WL 7410991, at *6 (D. Conn. Nov. 2, 2017) (citing *Marshall v. Town of Middlefield*, No. 3:10-CV-1009 (JCH), 2012 WL 601783, at *9 (D. Conn. Feb. 23, 2012)); *Lopez v. Smiley*, 375 F. Supp. 2d 19, 24 n.2 (D. Conn. 2005); *Torres v. Armstrong*, No. CV990427057S, *Thompson, J.*, 2001 WL 1178581, at *5-*7 (Conn. Super. Ct. Sept. 6, 2001). Moreover, as shown above, Plaintiff has failed to state a plausible free speech claim against Stamp under federal law, and therefore, this Court cannot exercise supplemental jurisdiction over a free speech claim under state law. Therefore, the claims under §§ 3, 4, 5, and 14 are dismissed.

Article First, § 9 provides that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const. art. I, § 9. Although the Connecticut Supreme Court has authorized a narrow damages action under § 9 for a case dealing with illegal searches and seizures; *see Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998); Plaintiff's allegations in this case do not provide a factual basis for a claim under this provision. *See Silvera v. Conn. Dept. of Corr.*, 726 F. Supp. 2d 183, 199-200 (D. Conn. 2010) (declining supplemental jurisdiction over prisoner's § 9 claim). Similarly, § 19 provides for the right to a trial by jury;

Conn. Const. art. I, § 19; but Plaintiff has not alleged facts which would support a private right of action under § 19.

Finally, this Court has not recognized private actions for money damages under § 10 or § 20.  See *Tyus v. Semple*, No. 3:19-CV-73 (VAB), 2019 WL 1877076, at *3 (D. Conn. Apr. 26, 2019); *Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001).  Based on the foregoing, Plaintiff's state constitutional claims are dismissed.

## ORDERS

(1) The clerk is directed to reopen this case.  Plaintiff's Eighth Amendment claim for deliberate indifference to medical needs may proceed against Dr. Ruiz in his individual capacity for damages and in his official capacity for injunctive relief.  All other claims are dismissed.

(2) The clerk shall prepare a summons form and send an official capacity service packet, including the amended complaint (Dkt. No. 12), to the United States Marshal Service.  The U.S. Marshal is directed to effect service of the amended complaint on Dr. Ruiz in his official capacity at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this order and file a return of service within thirty (30) days from the date of this Order.

(3) The clerk shall verify the current work address for Dr. Ruiz with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint (Dkt. No. 12) to him at the confirmed address within twenty-one (21) days of this Order, and report on

the status of the waiver request on the thirty-fifth (35th) day after mailing. If Dr. Ruiz fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall mail a courtesy copy of the amended complaint and this Order to the DOC Office of Legal Affairs.

(5) Dr. Ruiz shall file his response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. He may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to the parties by the Court. The order can also be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Should Defendant object to disclosure of any information required to be disclosed by the court's standing order, such party must file an objection within ninety days of the date of service stating the basis for the objection

with sufficient particularity for the court to rule on the objection. Vague and categorical objections, such as the talismanic "safety and security" objection will not suffice and will be summarily denied in which case production is ordered to be made with in fourteen (14) days of the court's ruling on the objection.

(8) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

SO ORDERED at Hartford, Connecticut.

*Vanessa Lynne Bryant*  Vanessa Bryant
2019.09.24 11:27:16 -04'00'
**VANESSA L. BRYANT**
**UNITED STATES DISTRICT JUDGE**